David S. Ratner, Esq.
Ratner Molineaux, LLP
david@ratnermolineaux.com
1990 N. California Blvd. Ste. 20
Walnut Creek, CA 94596
Telephone: (925) 239-0899
Facsimile: (925) 891-3818
*Attorney for Plaintiff and the Class*

[Additional counsel appearing on signature page]
*Attorneys for Plaintiff and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHAEL TRUJILLO,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**CHECK AGENCIES OF CALIFORNIA, INC., D/B/A CHECK CENTER,** a California corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

### CLASS ACTION COMPLAINT

Plaintiff Michael Trujillo ("Trujillo" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Check Agencies of California, Inc. d/b/a Check Center ("CAC" or "Defendant") to stop CAC from continuing to violate the Telephone Consumer Protection Act by sending unsolicited autodialed text messages to consumers, including to consumers who have registered their phone numbers on the national Do Not Call Registry ("DNC"), and to otherwise obtain injunctive and monetary relief, including statutory damages, for all persons injured by CAC's conduct. Plaintiff, for his Complaint, alleges as

follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.      Plaintiff Trujillo resides in Victorville, Apple Valley, California.

2.      Defendant CAC is a for-profit California corporation with its headquarters located in Oakland, California. CAC does business throughout this District and throughout California.

## JURISDICTION AND VENUE

3.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.      This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District, and because the wrongful conduct giving rise to this case was directed to/originated from this District.

## TCPA BACKGROUND

5.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

6.      According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a

greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

7.      While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

8.      "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

9.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

16.     According to a respected robocall watch site, robocalls have increased by a whopping 494% in a four year span: from 8.9 billion in the last three quarters of 2015 to 43 billion in the same nine months of 2019. *See* YouMail Robocall Index, Historical Robocalls by Time, available at https://robocallindex.com/history/time/ (accessed Mar. 5, 2020).

17.     Of the 58.5 billion robocalls made in 2019, YouMail reports that over half of these calls—56%—were scam calls, spoofed calls, or telemarketing calls. *Id.*

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

CLASS ACTION COMPLAINT
-4-

18.     Encouraging people to hold telemarketers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

## INTRODUCTION

19.     CAC operates using the dba Check Center:

Disclosures:
Check Agencies of California, Inc. dba Check Center is a licensed, socially responsible direct lender doing business only in the state of California.
Contact us toll-free:
Call us toll-free at 1-888-593-5626 with any questions you may have about our services.[3]

20.     CAC provides consumers with check cashing, cash advances and loans, along with other related services that it provides through 17 retail locations that are located in California.[4]

21.     Part of CAC's marketing plan includes sending solicitation text messages *en masse* to consumers offering CAC's different services.

22.     Unfortunately, CAC caused such text messages to be sent using an autodialer without first obtaining the necessary prior express consent. To make matters worse, consumers have received multiple text messages despite having registered their phone numbers on the DNC.

23.     In Plaintiff's case, he received 2 unsolicited, autodialed text messages to his cellular phone from Defendant directing him to either visit checkcenters.com or visit a CAC retail location. Plaintiff's cell phone number was registered on the DNC more than 31 days prior to receiving these 2 unsolicited text messages.

24.     In response to these text messages, Plaintiff files this class action lawsuit seeking injunctive relief, requiring CAC to cease sending unsolicited, autodialed text messages to

---

[3] https://www.checkcenters.com/
[4] *Id.*

1  consumers' cellular telephone numbers, and to other phone numbers registered on the DNC, as

2  well as an award of statutory damages to be paid into a common fund for the benefit of the

3  members of the Classes.

4

5                              **COMMON ALLEGATIONS**

6          **CAC Sends Unsolicited Text Messages Using an Autodialer**
           **Without Obtaining the Necessary Express Prior Written Consent**

7          25.    CAC sends text messages to consumers without consent.

8
           26.    The purpose of these text messages is to solicit the services CAC offers to
9
   consumers through its retail stores.
10
           27.    CAC does not procure the necessary prior express written consent that is required
11
   to send text messages using an autodialer.
12

13         28.    In fact, on its website, CAC allows consumers to put a check in a box indicating

14  their wish to receive SMS notifications, but CAC makes no mention about using an autodialer to

15  send these text messages:

16

17

18

19

20

21

22

23

24

25

26



27  [5] https://www.checkcenters.com/mobile/check_cashing_application

28

29.     In sending the unsolicited text messages at issue, Defendant, or a third party acting on its behalf, used an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator.  This is evident from the circumstances surrounding the text messages, including the ability to trigger an automated response by replying "STOP," the text messages' commercial and generic content, that substantively identical texts were sent to multiple recipients, and that they were sent from a short code, which is consistent with the use of an automatic telephone dialing system to send text messages.

30.     Additionally, Defendant CAC has sent multiple unsolicited autodialed text messages to consumer phone numbers, regardless of whether those numbers were registered on the DNC.

**Plaintiff Received Unsolicited Autodialed Text Messages to His Cell Phone Despite Being on the DNC List**

31.     Plaintiff Trujillo's cell phone number was registered on the DNC on May 13, 2005.

32.     His cell phone number is not associated with a business and is for personal use.

33.     On April 16, 2020 at 1:11 PM, Trujillo received an unsolicited, autodialed text message from Defendant on his cell phone using shortcode 77513:



CLASS ACTION COMPLAINT
-7-

34.     This text message directs Plaintiff to visit checkcenters.com, CAC's main website where CAC's for-profit service offerings are solicited.

35.     On April 24, 2020 at 11:40 AM, Trujillo received a second unsolicited, autodialed text message from Defendant on his cell phone again using shortcode 77513:



36.     This text message is also a solicitation, as it directs Plaintiff to cash his stimulus check at a CAC location, which is a paid-for service.

37.     Plaintiff Trujillo believes the 2 text messages were autodialed due to their generic text, both were sent using a shortcode and because the text messages both tell Plaintiff he can opt-out by replying "STOP."

38.     When Plaintiff replied "Stop" on April 26, 2020 to 77513, he received an immediate automated confirmation, instructing him to reply "STOPALL" to fully opt-out. Plaintiff did reply "STOPALL" and received an immediate automated confirmation that he was in fact opted-out:



39.    Plaintiff has never had a relationship with CAC, never provided them his phone number or address, and has never provided CAC express consent under the TCPA, written or otherwise, to contact him.

40.    The unauthorized text messages sent by CAC, as alleged herein, have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Trujillo's use and enjoyment of his cellular phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory, data, and battery life on the phone.

41.    Seeking redress for these injuries, Trujillo, on behalf of himself and two Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed text messages to cellular telephones, including solicitation text messages to a phone number protected by the DNC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims

42.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2)

and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of

the following Classes:

> **Autodialed No Consent Class:** All persons in the United States who from four
> years prior to the filing of this action through the date notice is sent to the Class:
> (1) Defendant (or an agent acting on behalf of Defendant) caused a text message to
> be sent, (2) to the person's cellular telephone number, (3) using the text messaging
> platform Defendant used to text message Plaintiff, (4) for whom Defendant claims
> it obtained prior express consent in the same manner as Defendant claims it
> supposedly obtained prior express consent to text message Plaintiff.

> **Do Not Call Registry Class**: All persons in the United States who from four years
> prior to the filing of this action through the date notice is sent to the Class (1)
> Defendant (or an agent acting on behalf of Defendant) texted more than one time;
> (2) within any 12-month period (3) where the person's telephone number had been
> listed on the DNC for at least thirty days; (4) for a substantially similar reason that
> Defendant texted Plaintiff; and (5) for whom Defendant claims it obtained prior
> express consent in the same manner as Defendant claims it supposedly obtained
> prior express consent to text message Plaintiff.

43.     The following individuals are excluded from the Classes: (1) any Judge or

Magistrate presiding over this action and members of their families; (2) Defendant, its

subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents

have a controlling interest and their current or former employees, officers and directors; (3)

Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion

from the Classes; (5) the legal representatives, successors or assigns of any such excluded

persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated

and/or released. Plaintiff anticipates the need to amend the Class definition following appropriate

discovery.

44.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

45.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions go to the very heart of the case and predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

> (a) whether Defendant used an automatic telephone dialing system to send text messages to Plaintiff and the members of the Autodialed No Consent Class;
>
> (b) whether Defendant sent unsolicited text messages to phone numbers registered on the DNC;
>
> (c) whether Defendant's conduct constitutes a violation of the TCPA;
>
> (d) whether Defendant had prior express consent to send the text messages;
>
> (e) whether the messages are commercial in nature; and
>
> (f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

46.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and his Counsel has the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

47.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with

respect to the Classes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227, et. seq.)**
**(On Behalf of Plaintiff and the Autodial No Consent Class)**

48.     Plaintiff repeats and realleges paragraphs 1 through 47 of this Complaint and incorporates them by reference.

49.     Defendant and/or its agents sent unwanted solicitation text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using an ATDS.

50.     These solicitation text messages were sent *en masse* without the consent of the Plaintiff and the other members of the Autodialed No Consent Class to receive such solicitation text messages.

51.     Defendant never obtained prior express consent, written, oral, or otherwise, to send the text messages at issue.

52.     Defendant's conduct was wilful or knowing.

53.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to between $500 and $1,500 for each and every text message.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227, et. seq.)**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

54.    Plaintiff repeats and realleges the paragraphs 1 through 47 of this Complaint and incorporates them by reference.

55.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

56.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[6]

57.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

58.    Defendant has violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

59.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one phone call/text message in a 12-month period by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above, where their phone numbers had been registered on the DNC for at least 30 days. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and are entitled to between $500 an $1,500 per violation.

---

[6] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Trujillo, individually and on behalf of the Classes, prays for the following relief:

a)  An order certifying the Classes as defined above, and appointing Plaintiff as the representative of the Classes and his attorneys as Class Counsel;

b)  An award of actual and/or statutory damages and costs to be paid into a common fund for the benefit of the Classes;

c)  An order declaring that Defendant's actions, as set out above, violate the TCPA;

d)  An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Classes; and

e)  Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Trujillo requests a jury trial.

Respectfully Submitted,

**MICHAEL TRUJILLO**, individually and on behalf of those similarly situated individuals

Dated: May 12, 2020

By:   /s/ *David Ratner*
David S. Ratner, Esq.
Ratner Molineaux, LLP
1990 N. California Blvd., Ste. 20
Walnut Creek, CA 94596

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
3900 E Mexico Ave., Suite 300
Denver, CO 80210
Tel: 720-213-0675

*Attorneys for Plaintiff and the alleged Classes*

*\*Pro Hac Vice motion forthcoming*